# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Miscellaneous Case No. 15-mj-1087-NYW

IN THE MATTER OF THE EXTRADITION OF:

MIRELLA IVONNE AVILA RAMOS

---

## ORDER

---

Magistrate Judge Nina Y. Wang

     This action comes before this court on a number of matters: the detention of Mirella Ivonne Avila-Ramos ("Respondent" or "Ms. Avila-Ramos")[1] pending the Extradition Hearing scheduled for August 26, 2015 at 11:00 a.m.; Defendant's Motion for Ten-Day Detention with Direction to Notify Immigration and Customs Enforcement Agency ("ICE") ("Motion for Ten-Day Detention") filed on May 30, 2015 [#23]; Defendant's Motion to Quash Arrest Warrant filed on June 2, 2015 ("Motion to Quash") [#29];[2] Defendant's Motion to Dismiss for Lack of Jurisdiction filed on July 20, 2015 ("Motion to Dismiss"); and Defendant's Motion for Disclosure of Mexico's Formal Request [#63]. This court has jurisdiction to consider these

---

[1] While Ms. Avila-Ramos refers to herself as a "Defendant," an extradition proceeding is not a traditional criminal proceeding subject to Federal Rules of Criminal Procedure. Fed. R. Crim. P. 1(a)(5)(A). Indeed, it is well-settled that "[t]he ordinary technicalities of criminal proceedings are applicable to proceedings in extradition only to a limited extent." *Wright v. Henkel*, 190 U.S. 40, 57 (1903). Therefore, this court refers to Ms. Avila-Ramos as a Respondent, rather than a Defendant.

[2] The court originally issued an Order addressing the pending Motion for Ten Day Detention and Motion to Quash on June 17, 2015. For unknown reasons, that Order does not appear to have been docketed or served on the Parties, as noted by Respondent in the Motion to Dismiss on July 20. The court inadvertently did not discover this issue until turning to disposition of the Motion to Dismiss after the Government filed its Response on August 3, 2015 [#67]. This Order incorporates the court's analysis on those Motions, along with disposition of the Motion to Dismiss and the Motion for Disclosure of Mexico's Formal Request.

issues pursuant to 28 U.S.C. § 3184[3] and Local Criminal Rule 57.1(b)(8) that provides that a magistrate judge may "exercise powers and duties necessary to extradite fugitives under 18 U.S.C. §§ 3181-96."  D.C.COLO.LCrR 57.1(b)(8).  For the reasons set forth below, the court DENIES Respondent Avila-Ramos' Motion to Quash Arrest Warrant, DENIES the Motion for Ten-Day Detention, DENIES the Motion to Dismiss for Lack of Jurisdiction, DENIES the Motion for Mexico's Formal Request as MOOT; and ORDERS that Ms. Avila-Ramos remain detained pending the extradition hearing that will proceed before the undersigned Magistrate Judge on August 26, 2015 at 1:00 p.m.

---

[3] 18 U.S.C. § 3184 provides:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181 (b), any justice or judge of the United States, or **any magistrate judge authorized so to do by a court of the United States**, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181 (b), issue his warrant for the apprehension of the person so charged, **that he may be brought before such** justice, judge, or **magistrate judge**, to the end that the evidence of criminality may be heard and considered.  Such complaint may be filed before and such warrant may be issued by a judge or magistrate judge of the United States District Court for the District of Columbia if the whereabouts within the United States of the person charged are not known or, if there is reason to believe the person will shortly enter the United States. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181 (b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made. (emphasis added).

## BACKGROUND

The United States initiated a Complaint for Arrest for the Purposes of Extradition ("Complaint") pursuant to 18 U.S.C. § 3184 on May 15, 2015, alleging that the government of Mexico was seeking the extradition of Respondent Mirella Ivonne Avila-Ramos, as authorized by an extradition treaty between the United States and Mexico ("Extradition Treaty"). [#1]. The Complaint alleges that the request for provisional arrest for extradition purposes was made by the Mexican government through a Diplomatic Note 01230 dated March 4, 2015 provided to the United States Department of Justice by authorities in the Procuraduria General de la Republica (Attorney General's Office), which indicated that Ms. Avila-Ramos planned the murder of her husband, Mario Moreno Rubio, with two others. [*Id.* at ¶ 6]. According to the information provided by Mexico, Respondent Avila-Ramos is charged in the State of Chihuahua, Mexico with Aggravated Homicide, which is an extraditable offense under the Extradition Treaty. [*Id.* at ¶¶ 5, 10]. In addition, the unofficial translation of Diplomatic Note 01230 indicates that the request for arrest is made on "the basis of Article 1, Article 1, and particularly, Article 11 of the Extradition Treaty, the **PROVISIONAL ARREST FOR INTERNATIONAL EXTRADITION PURPOSES** of **MIRELLA IVONNE ÁVILA RAMOS.**"[#26-1 at 1 (emphasis in original)]. It further justifies the provisional arrest by identifying the fact that Ms. Avila-Ramos was recently located in Denver, Colorado and "it is feared that she may move elsewhere and his [sic] whereabouts will become unknown." [*Id.*] The Complaint is sworn and signed by the Assistant United States Attorney, Jason St. Julien. [*Id.* at 8]. Based on the Complaint, the court issued a provisional arrest warrant. [#2].

On May 19, 2015, Deputy United States Marshals arrested Respondent Avila-Ramos on the provisional arrest warrant. [#27 at 1]. On May 27, 2015, she filed a Motion for discovery

[#27], arguing that she was entitled to discovery under the Federal Rules of Criminal Procedure, case law interpreting obligations of prosecutors in criminal cases, or under the court's inherent authority because "law and justice requires." [#17]. The United States objected, but provided discovery as to the unofficial translation of the Diplomatic Note 01230. [#26, #26-1]. This court denied Ms. Avila-Ramos' Motion for Discovery, finding that extradition hearings are not covered by the Federal Rules of Criminal Procedure, and Ms. Avila-Ramos never identified any basis for the court to exercise its inherent authority to require discovery. [#33].

In response to the United States' request to detain her pending the extradition hearing, Ms. Avila-Ramos also filed the currently pending Motion for Ten-Day Detention and Motion to Quash. The United States opposed both motions, arguing that Ms. Avila-Ramos should remain in United States Marshals' custody pending her extradition hearing [#27] and that the provisional arrest warrant[4] for Ms. Avila-Ramos was proper under the Extradition Treaty [#39]. In support of its position, the United States proffered the unofficial translation of the Diplomatic Note 01230, a copy of the applicable treaty, and a Declaration of Tom Heinemann, an Assistant Legal Adviser for Law Enforcement and Intelligence in the Legal Adviser's Office of the United States Department of State. [#39, #39-1, #39-2, #39-3]. The court held a hearing on June 5, 2015, on the United States' request to detain Ms. Avila-Ramos and on the pending Motion for Ten-Day Detention and Motion to Quash, in which Ms. Avila-Ramos was permitted to introduce testimony and evidence related to the issue of her detention.

---

[4] The United States, in its response, took responsibility for the error of calling the document that led to Respondent's arrest as an "arrest warrant" instead of a "provisional arrest warrant." [#39 at 1]. The court notes, however, that the Complaint correctly noted that the Mexican Government was seeking the provisional arrest of Respondent [#1 at ¶ 3], and the United States at oral argument, and in its papers, concedes that Ms. Avila-Ramos cannot be detained beyond July 18, 2015 without a formal request for extradition from Mexico. [#39 at 4].

During oral argument, the Parties focused on two main issues:  (1) the validity of the warrant that led to Ms. Avila-Ramos' provisional arrest; and (2) whether Ms. Avila-Ramos should be detained by United States Marshals pending her extradition hearing.  As to the validity of the provisional arrest warrant, Respondent argued that the warrant was invalid because the documents were not certified or authenticated by a witness and because there was no urgency to justify her provisional arrest.  She further argued that the documents supporting the Complaint for her arrest warrant had to bear some official imprimatur of the Mexican Government, under Article 11 of the Extradition Hearing, and because Diplomatic Note 01230 was an unofficial translation, it could not validly support her provisional arrest.  The United States argued that its Complaint properly relied upon the documents received from the Mexican Government through diplomatic channels, nothing in the Treaty required that the Diplomatic Note or its translation be certified, and that Mr. Heinemann attested under the penalty of perjury that the request was consistent with the requirements of Article 11 of the Extradition Treaty.

As to her detention, counsel for Ms. Avila-Ramos clarified that he did not seek her release on bond, but rather, was seeking her release to the custody of the Bureau of Immigration and Customs Enforcement ("ICE") so that she could resume processing her immigration applications.   Ms. Avila-Ramos argued her immigration status constituted "special circumstances" to warrant her release from United States Marshals' custody.  The United States opposed Ms. Avila-Ramos' release from United States Marshals' custody, and argued that there was simply no "special circumstance" that justified her release.  At the end of the hearing, due to the expedited nature of the briefing and argument, the court permitted the Parties to submit additional authority to support their respective positions on three points:  (1) whether Article 11 of the Extradition Treaty required any additional authentication to support the provisional arrest

warrant; (2) whether any authority addressed whether this court could properly determine whether there was sufficient "urgency" to justify a provisional arrest under the Extradition Treaty; and (3) whether any case law supported the finding that pending immigration proceedings constituted "special circumstances" to justify Ms. Avila-Ramos' release from United States Marshals' custody.

On June 10, 2015, Respondent filed a "Reply to Government's Response to Mirella (sic) Ivonne Avila-Ramos' Motion to Quash Arrest Warrant and Declare Arrest Illegal [ECF No. 29] and Proffer of Supplemental Authority" ("Respondent's Reply") [#44].   In the Reply, Respondent re-argues that the unofficial translation of the Diplomatic Note 01230 is insufficient to support the provisional arrest warrant [#44 at 3-5].   She specifically argues that Mr. Heinemann "failed to produce any evidence that the Secretary of State certified such a finding thereby authorizing the filing of a complaint for the issuance of a warrant for the provisional arrest of Defendant-Movant."   [*Id.* at 6].   Ms. Avila-Ramos then goes on to cite cases in which under different extradition treaties, a certificate issued by the U.S. Secretary of State is required for the preliminary arrest of the foreign fugitive.   [*Id.*]   Ms. Avila-Ramos then argues that there was no urgency that supported her provisional arrest, and that absent authority from the United States Secretary of State, the United States Attorney had no legal authorization to file a complaint.   [*Id.* at 8].   Ms. Avila-Ramos did not further address, or submit additional authority, as to whether her immigration proceedings constituted "special circumstances" to allow her release to ICE custody.   [#44].   The United States filed a "Government's Notice," stating it had found no additional authority requiring any formalization requirements for a provisional arrest under Article 11 of the Extradition Hearing.   [#45].   It did not address the other two issues, *i.e.*,

whether this court had authority to address urgency or whether Ms. Avila-Ramos' immigration proceedings amounted to "special circumstances." [*Id.*]

Respondent then filed a Motion to Dismiss for Lack of Jurisdiction on July 20, 2015, arguing that the court lacked jurisdiction because the Government had not yet turned over the formal extradition papers. [#58]. The Government responded to the Motion to Dismiss the next day, indicating that the Department of State received Mexico's formal request for extradition for Ms. Avila-Ramos on July 17, 2015 – as required by the treaty. [#60]. The Government provided a copy of the formal request to defense counsel on August 5, 2015 [#71, #72 at 1].

The court now turns to each of the issues in turn.

## ANALYSIS

### I.      Motion to Quash and Motion to Dismiss

#### A.      Applicable Law

It is well-settled that requests for extradition are governed by the applicable extradition treaty between the United States and the requesting foreign nation, in this case, Mexico, as implemented by the United States extradition statutes. 18 U.S.C. § 3181; *Charlton v. Kelly*, 229 U.S. 447, 449 (1913) ("The procedure in an extradition proceeding is that found in the treaty under which the extradition is demanded, and the legislation by Congress in aid therof.") The United States and Mexico have entered an Extradition Treaty, May 4, 1978, 31 U.S.T. 5059, TIAS 9656. The request made by the Mexican Government upon which the Complaint is founded is one made for a provisional arrest of Respondent, pursuant to Article 11 of the Extradition Treaty. [#1 at ¶ 3].

Article 11 of the Extradition Treaty provides:

<u>Provisional Arrest</u>

1. In the case of urgency, either Contracting Party may request, through the diplomatic channel, the provisional arrest of an accused or convicted person. The application shall contain a description of the offense for which the extradition is requested, a description of the person sought and his whereabouts, an undertaking to formalize the request for extradition, and a declaration of the existence of a warrant of arrest issued by a competent judicial authority or a judgment of conviction issued against the person sought.

2. On receipt of such a request, the requested Party shall take the necessary steps to secure the arrest of the person claimed.

3. Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person claimed, the executive authority of the requested Party has not received the formal request for extradition and the documents mentioned in Article 10.

[#39-2 at 4].   Unlike Article 10, which governs a formal extradition request, a certified copy of the warrant of arrest issued by a judge or other judicial officer of the requesting party is not required.   [*Id.*].   Instead, a provisional arrest only requires an application that contains "a description of the offense for which the extradition is requested, a description of the person sought and his whereabouts, and undertaking to formalize the request for extradition, and a declaration of the existence of a warrant of arrest issued by a competent judicial authority or a judgment of conviction issued against the person sought." [*Id.*]

### B.   Application to Ms. Avila-Ramos

In this case, Respondent seeks to quash the provisional arrest warrant, arguing that it fails to meet the requirements of Article 11 of the Extradition Treaty.   However, the unofficial translation of Diplomatic Note 01230 contains all of the elements of information identified by the Article 11.   It contains a description of the offense, *i.e.*, aggravated homicide, for which the extradition is requested.   [#39-1 at 2].   In fact, it gives a detailed recitation of the factual allegations to support the charge.[5]   [*Id.* at 4-14].   It also identifies the Respondent, her likely

---

[5] Those factual allegations are then summarized in the United States' Complaint. [#1 at ¶¶ 6-9].

whereabouts, and appends a photograph of her.  [*Id.* at 1, 14-16].  It includes an undertaking to formalize the request for extradition:  "I assure Your Excellency that I will submit the formal extradition request within sixty days from the date of confirmation of the **PROVISIONAL ARREST FOR INTERNATIONAL EXTRADITION PURPOSES** of the accused, **MIRELLA IVONNE ÁVILA RAMOS**.*"* [*Id.* at 15 (emphasis in original)].  And while it does not include a certified copy of the arrest warrant, it includes the name of the requesting Mexican diplomat, Alejandro Ives Estivill Castro, and a statement that "[o]n October 1, 2012, the Control Judge for Preliminary Proceedings in the Judicial District of Morelos in Chihuahua, Chihuahua, issued an arrest warrant against **MIRELLA IVONNE AVILA RAMOS** and another, within criminal case number 2290/2012, for her alleged perpetration of the crime of **AGGRAVATED HOMICIDE** (*HOMICIDIO CALIFICADO*).  This crime is set forth and punishable by Articles 123, 124, 125, 127 and 136 Section I and III of the Penal Code of Chihuahua State, in force at the time the events took place."  [*Id.* at 2 (emphasis in original)].

Respondent Avila-Ramos urges the court to reject the Complaint and quash the provisional arrest warrant, because Diplomatic Note 01230 is not certified by the Secretary of State [#44 at 3-6] and also contains no other formalities.  But Article 11 of the Extradition Treaty does not contemplate a certification by the Secretary of State, nor does it require any formalities.  [#39-2 at 4].  If the United States intends to proceed to the next stage, *i.e.*, the extradition hearing, it must receive a formal request for extradition (with the certified copy of the warrant of the arrest) from Mexico pursuant to Article 10 of the Extradition Hearing no later than July 18, 2015.  *See In re Extradition of Figueroa*, Case No. 12-M-269, 2013 WL 3243096, *2 (N.D. Ill. June 26, 2013).  Article 11(3) of the Extradition Treaty mandates that if Mexico does not submit

a formal request for extradition in sixty days of the provisional arrest, the provisional arrest **shall** be terminated.  *Id.*; [#39-2 at 4].

Ms. Avila-Ramos' next argument is that there was not sufficient urgency to justify her provisional arrest because she was already in ICE custody.  [#44 at 7].  But Respondent points to no authority, and this court could find none, that vests this court with the authority to quash the arrest warrant even if it found that urgency did not exist.  As the United States points out, once it received the request from Mexico to provisionally arrest Respondent, Article 11(2) of the Extradition Treaty required the United States to "take the necessary steps to secure the arrest of the person claimed," [#39-2 at 4] – without the ability to second-guess Mexico's affirmative statement of urgency contained in the Diplomatic Note 01230.

Accordingly, this court DENIES the Motion to Quash.  In addition, the court DENIES the Motion to Dismiss, as the Government's Notice includes correspondence from the State Department that it had received a formal request for extradition for Ms. Avila-Ramos on July 17, 2015 – within 60 days of the provision request as required by the treaty.  [#59-1].  In addition, the Government has now provided both Respondent and the court a copy of the formal documents requesting extradition by Mexico.  [#71].

## II.    Detention

The court next turns to whether Respondent should be detained pending her extradition hearing scheduled for August 26, 2015.  Respondent has filed a Motion for Ten-Day Detention and also seeks to be released from United States Marshals' custody to be placed in ICE custody so that she may continue with her immigration proceedings.

### A.     Applicable Law

There is a long-standing presumption against bail in extradition proceedings, absent special circumstances.  *Wright v. Henkel*, 190 U.S. 40, 42 (1903).  The traditional rationale for the presumption is that the individual, if released, could abscond, leading to serious embarrassment to the United States and a potential that reciprocating foreign countries would not honor this country's extradition requests.  *See In re Extradition of Orozco,* 268 F.Supp.2d 1115, 1117 (D. Ariz. 2003).  While courts determine whether special circumstances exist on a case-by-case basis, one court summarized the types of circumstances under which bond has been permitted pending the extradition hearing:

(1) The extraditee displays a high probability of success on the merits;

(2) The extraditee has suffered a serious deterioration of health;

(3) The extraditee has shown there is an unusual delay in the appeals process;

(4) The extraditee has shown the extradition proceeding will be unusually long and complex;

(5) The extraditee has shown the country seeking extradition would grant bail in a comparable extradition case dealing with an equivalent charge; and

(6) The extraditee has shown by clear and convincing evidence bail is available for the substantive offense in the country seeking extradition.

*See In the Matter of the Extradition of Kamel Nacif-Borge*, 829 F. Supp. 1210, 1216-19 (D. Nev. 1993).

### B.     Application to Ms. Avila-Ramos

Ms. Avila-Ramos' case is slightly different, because she argues that she should be released to the custody of ICE, another federal agency, in order to process her immigration

11

applications.  Nevertheless, she would be outside the custody of this court and the United States

Marshals, and Ms. Avila-Ramos has failed to demonstrate by clear and convincing evidence that

her immigration proceedings are the type of special circumstances that justifies release.  Indeed,

other courts confronted with similar issues have denied requests for release.  *See e.g.*, *In re the*

*Extradition of Orozoco*, 268 F.Supp.2d at 1116 (holding that Respondent's pending application

for naturalization, coupled with other factors such as a finding that there was no flight risk, was

insufficient to warrant release).  Even if the court were to release Respondent to ICE custody,

there is simply no guarantee that her immigration proceedings would go forward, in light of the

extradition request from Mexico.  *See Barapind v. Reno*, 225 F.3d 1100 (9th Cir. 2000) (holding

that the Bureau of Immigration Appeals acted reasonably in holding Barapind's asylum

proceedings in abeyance pending the completion of the extradition process). And once released,

it is unclear how the court could guarantee her appearance at her extradition hearing, as the court

does not have jurisdiction over ICE in this matter.  Therefore, the court DENIES Respondent's

Motion for Ten-Day Detention and ORDERS Ms. Avila-Ramos DETAINED pending her

extradition hearing.

**III.    Disclosure of Mexico's Formal Request**

In her Motion for Disclosure of Mexico's Formal Request, Respondent requests that the

Government provide her a copy of Mexico's formal request to extradite.  [#63].  The court issued

a Minute Order requesting the Government to respond by August 5, 2015, as to why the Motion

should not be granted.  [#65].  The Government responded by stating that it had not yet received

the Formal Request, but would provide it upon receipt.  [#68].  As acknowledged by Respondent

in her Motion for Discovery, she received a copy of Mexico's formal request to extradite on

August 5, 2015. [#72 at 1]. Therefore, the relief sought by Respondent is no longer necessary and her Motion is moot.

### CONCLUSION

For the reasons set forth herein, the court hereby ORDERS:

(1)     The Motion to Quash Arrest Warrant [#29] is DENIED;

(2)     The Ten-Day Detention with Direction to Notify Immigration and Customs Enforcement Agency [#23] is DENIED;

(3)     The Motion to Dismiss for Lack of Jurisdiction [#58] is DENIED;

(4)     The Motion for Disclosure of Mexico's Formal Request [#63] is DENIED AS MOOT;

(5)     Ms. Avila-Ramos is REMANDED TO THE CUSTODY of the Attorney General or their designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(6)     Respondent is to be AFFORDED a reasonable opportunity to consult confidentially with counsel;

(7)     Upon order of this Court or on request of an attorney for the United States of America, the person in charge of the corrections facility shall deliver Respondent to the United States Marshal for the purpose of an appearance in connection with this proceeding; and

(8)     The extradition hearing is set for August 26, 2015 at 1:00 p.m. before the undersigned Magistrate Judge in the Byron G. Rogers U.S. Courthouse, 1929 Stout Street, Courtroom C-205, Denver, Colorado 80294.

The court will dispose of Respondent's pending Motion for Discovery filed on August 7, 2015 by separate Order after the contemplated hearing.

DATED:  August 11, 2015                    BY THE COURT:


                                           s/ Nina Y. Wang
                                           United States Magistrate Judge